[Cite as *Berea v. Timm*, 2019-Ohio-2573.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| CITY OF BEREA, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 107740 |
| v. | : | |
| ALEXANDER R. TIMM | : | |
| Defendant-Appellant. | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 27, 2019

Criminal Appeal from Berea Municipal Court
Case No. 18 CRB 00500-1

*Appearances:*

Barbara Jones, City Law Director, and Danielle Fekete Swisher, Assistant Prosecutor, and Megan M. Matthews, Assistant Director of Law, *for appellee.*

Wargo and Wargo, and Thomas M. Wilson, *for appellant.*

LARRY A. JONES, SR., J.:

{¶ 1} Defendant-appellant, Alexander Timm ("Timm"), appeals his conviction for domestic violence, which was rendered after a bench trial. For the reasons that follow, we affirm.

{¶ 2} In 2018, Timm was charged with one count of domestic violence, in violation of R.C. 2919.25(A), a first-degree misdemeanor. The matter proceeded through the pretrial process. On the day of trial, Timm filed a motion in limine to exclude the statements he made to police prior to receiving *Miranda* warnings. The trial court heard argument on the motion prior to trial and subsequently overruled the motion, finding that Timm was required to file a motion to suppress his statements, not a motion in limine; therefore, he waived any objection to his statements.

{¶ 3} The following evidence was adduced at trial.

{¶ 4} Timm and the victim attended a birthday party where they both consumed alcohol and became intoxicated. Upon returning home from the party, Timm and the victim got into an argument. The victim's daughter and daughter's friend were in the house at the time. The police received a 911 call but were disconnected; the dispatcher heard a woman screaming but did not get her name before the call was disconnected. The victim's daughter and her friend called 911 a second time and reported that Timm slammed the victim to the ground and the victim sustained a head injury with blood. Dispatch noted that the caller stated that the victim needed medical attention and the caller was starting to hyperventilate or was having difficulty breathing.

{¶ 5} The police arrived on scene. Patrolman Adam Laeng ("Patrolman Laeng") testified that Timm let him into the house. Patrolman Laeng testified that he had domestic violence training and had responded to many domestic violence

situations in the past.  As part of his standard procedure, Patrolman Laeng separates the involved parties and tries to ascertain what happened.  On this evening, Patrolman Laeng spoke with Timm.  Timm told the officer that he and the victim were at a birthday party, returned home, and the victim started going through Timm's text messages on his phone.  Timm was trying to go to bed and admitted he hit the victim with a pillow to knock the phone out of her hand.  According to Patrolman Laeng, Timm stated that at that point the victim "came at him * * * trying to hit him in the face two times, and his [Timm's] words, he picked her up and threw her off of him, and she must have hit her head on something."

{¶ 6}  Patrolman Laeng testified that he detained Timm and put him in handcuffs, for his and Timm's safety, because Patrolman Laeng was the only officer on scene.  Important to this appeal, Patrolman Laeng testified that Timm told him what happened before the officer placed him in handcuffs:

> Prosecutor:  So, Officer Laeng, you're testifying that you placed the defendant in handcuffs and told him he was being detained after he made statements to you explaining what had happened?
>
> Patrolman Laeng:  Yes.
>
> Prosecutor:  So you placed him in handcuffs after he made the statement to you * * * that she had gone over, attempted to hit him, and then he threw her down, and that's when she cut her head open?
>
> Patrolman Laeng:  Affirm, yes, correct.
>
> Prosecutor:  He made that statement to you before he was placed in handcuffs?

**Patrolman Laeng:**  I believe so.  Because I know I didn't walk in immediately placing him in handcuffs, it was after we had some dialogue as to what happened.

{¶ 7}  Patrolman Laeng noted that the victim was "bleeding profusely" from the head.  The victim was subsequently transported to the hospital where she received six staples to close the wound on her head.

{¶ 8}  Patrolman Daniel Kelly ("Patrolman Kelly") was the next officer to arrive on scene.  Timm objected to his testimony because the city had not provided Patrolman Kelly's name in discovery.  The court overruled the objection.

{¶ 9}  Patrolman Kelly testified that Timm was in handcuffs when he arrived.  He dealt primarily with the victim, assessing her injuries.  Patrolman Kelly's body-cam video was played for the court.  There was discussion amongst the parties and the court as to statements Timm made that the body cam's sound picked up.  Patrolman Kelly, upon questioning by the court, stated that it sounded like Timm said, "I slammed her on the ground and her head cracked."

{¶ 10}  The victim testified that Timm is her boyfriend with whom she and her daughter live.  On the evening in question, the victim and Timm attended her brother's birthday party and they "drank too much," so someone drove them home.  They began to argue, "he hit me with the pillow, and so I got up and I punched him, and then he pushed me and I went to fall and then he fell with me * * * like he pushed me off of him."  She further testified that "I pulled him kind of.  Like so when I hit him and he went to go push me, I grabbed him, so we fell together, I guess."

{¶ 11}  On cross-examination, the prosecutor queried:

Prosecutor: But you fell because he pushed you? And then you grabbed him and that's why he fell as well?

Victim: Yeah, uh-huh.

Prosecutor: So you fell, hit your head, got the injuries because he pushed you?

Victim: Yeah.

{¶ 12} The victim testified that she called police but hung up the phone and it was her daughter's friend who made the second phone call to police.

{¶ 13} The court found Timm guilty as charged and sentenced him to ten days in jail, with credit for time served.

{¶ 14} Timm filed a notice of appeal and raises the following assignments of error for our review:

I. The trial court erred, as a matter of law, when it permitted the City of Berea to introduce into evidence, at a bench trial, a statement of the Defendant, made after the Defendant was handcuffed, detained, and in custody, even though the Defendant had not been provided his Constitutional rights as required under *Miranda v. Arizona*, (1966), 384 U.S. 436, and its Ohio progeny, based solely upon the improper application of the holding in *State v. French*, 72 Ohio St.3d 446 (1995).

II. The trial court's determination that Defendant Alexander R. Timm was guilty beyond a reasonable doubt, after a bench trial, constituted prejudicial error as it was based upon insufficient evidence.

III. The trial court erred when it permitted the City of Berea to present the testimony of Berea Police Officer Daniel Kelly who was not listed as a witness on the Witness List provided to Defendant by the City of Berea in violation of Rule 16 of the Ohio Rules of Criminal Procedure.

IV. The cumulative error doctrine precludes Mr. Timm's conviction for domestic violence.

**{¶ 15}** In the first assignment of error, Timm argues that the trial court erred when it allowed into evidence statements he made to the police. Timm objected to the admission of the statements on the day of trial via a motion in limine.[1] The trial court took the motion in limine under advisement and denied the motion after trial, finding that Timm should have filed a motion to suppress his statements:

> Having taken Motion in Limine under advisement, now upon further review and based upon holding in *State of Ohio v. French*,[2] the Court finds that in order to raise a Constitutional issue of statement made during a detention being admissible, Defendant must have filed a Motion to Suppress not a Motion in Limine, therefore and Defendant is deemed to have waived that Constitutional protection and the statement of Defendant made while he was handcuffed will be considered.

**{¶ 16}** Crim.R. 12(C)(3) requires a party who wishes to challenge evidence on the grounds that it was illegally obtained to move to suppress the evidence. Crim.R. 12(C)(3) provides that all "[m]otions to suppress evidence, including but not limited to statements and identification testimony, on the ground that it was illegally obtained" must be raised prior to trial. Crim.R. 12(D) provides

---

[1]We note that the motion in limine is not part of the trial-court record and its filing with the court does not appear on the trial court docket. From what we can glean from the transcript and the parties' arguments on appeal, Timm presented the trial judge a written motion in limine, which the court and the parties discussed in chambers and off the record. Before trial commenced, and on the record, the court noted that it had received the motion in limine and was taking it under advisement. We further note that, although it is curious that the motion in limine is not part of the trial-court record, it is the duty of an appellant to ensure the record, or whatever portions thereof are necessary for the determination of the appeal, are filed with the court in which he or she seeks review. *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 19, 520 N.E.2d 564 (1988).

[2] *State v. French*, 72 Ohio St.3d 446, 449, 650 N.E.2d 887 (1995).

that such motions should be made "within thirty-five days after arraignment or seven days before trial, whichever is earlier."

{¶ 17} In order to preserve a suppression issue for appeal, it must first be raised in the trial court. *State v. Wade*, 53 Ohio St.2d 182, 189-190, 373 N.E.2d 1244 (1978), *vacated in part on other grounds*, *Wade v. Ohio*, 438 U.S. 911, 98 S.Ct. 3138, 57 L.Ed.2d 1157 (1978).

{¶ 18} In *French*, 72 Ohio St.3d at 449, 650 N.E.2d 887, the Ohio Supreme Court noted that the purpose and effect of a motion to suppress and a motion in limine are distinct. A "motion to suppress" is a "[d]evice used to eliminate from the trial of a criminal case evidence which has been secured illegally, generally in violation" of a constitutional right. *Id.*, citing *Black's Law Dictionary*, 1014 (6 Ed.1990). "[T]he ruling of the court at the suppression hearing prevails at trial and is, therefore, automatically appealable by the state." *Id.*, citing R.C. 2945.67(A); Crim.R. 12(K).

{¶ 19} In contrast, a "motion in limine" is a motion "which is usually made before or after the beginning of a jury trial for a protective order against prejudicial questions and statements * * * to avoid injection into trial of matters which are irrelevant, inadmissible and prejudicial." (Citation omitted.) *State v. Grubb*, 28 Ohio St.3d 199, 200, 503 N.E.2d 142 (1986). In ruling on a motion in limine, "the trial court is at liberty to change its ruling on the disputed evidence in its actual context at trial. Finality does not attach when the motion is granted." (Citation omitted.) *Defiance v. Kretz*, 60 Ohio St.3d 1, 4, 573 N.E.2d 32 (1991).

{¶ 20} In *French*, the Ohio Supreme Court stated that a motion in limine may be used in two ways: (1) as a preliminary means of raising objections to evidentiary issues to prevent prejudicial questions and statements until the admissibility of the questionable evidence can be determined outside the presence of the jury, and (2) as the functional equivalent of a motion to suppress evidence that is either not competent or improper due to some unusual circumstance *not rising to the level of a constitutional violation*. (Emphasis added.) *Id.* at 450.

{¶ 21} Here, Timm's motion challenged custodial statements he made to the police; Timm was alleging a constitutional violation. The proper vehicle to do so was via a motion to suppress filed in accordance with Crim.R. 12. The court in this case took the motion in limine under advisement, and eventually ruled that the motion was improper. We find no error. Counsel could have asked for leave to file an untimely motion to suppress, but chose to proceed on the motion in limine.

{¶ 22} Timm made two sets of statements to the police. The first, in which he admitted he threw the victim down, were made prior to his being handcuffed and detained. The second, in which he stated he slammed the victim down, were made after he was in handcuffs.

{¶ 23} In *State v. Robinson*, 8th Dist. Cuyahoga No. 105667, 2018-Ohio-285, this court noted that:

> Generally speaking, "[p]olice are not required to administer *Miranda* warnings to everyone whom they question." "Only custodial interrogation triggers the need for *Miranda* warnings." ("a coercive environment does not automatically convert a noncustodial situation into one requiring *Miranda* warnings").

* * *

> A police officer's "[g]eneral on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected" by the Supreme Court's decision in *Miranda*.

(Citations omitted.) *Robinson* at ¶ 16 - ¶ 17.

{¶ 24} There is no question that Timm's initial statements to the police were noncustodial. Patrolman Laeng testified that Timm told him he threw the victim down before Patrolman Laeng placed handcuffs on Timm. While Timm's second statement to the police was made after he was handcuffed, we need not determine whether that statement was made in violation of his constitutional rights. Even if Timm had filed a proper motion to suppress, and the court had suppressed the second statement he made to police, there was still sufficient evidence of his guilt, as will be discussed under the next assignment of error. Thus, Timm has failed to show that he was prejudiced by the trial court's ruling on his motion in limine.

{¶ 25} In light of the above, the first assignment of error is overruled.

{¶ 26} In the second assignment of error, Timm contends that there was insufficient evidence to convict him of domestic violence because he did not knowingly harm the victim.

{¶ 27} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026,

2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 28} Pursuant to R.C. 2919.25(A), "No person shall knowingly cause or attempt to cause physical harm to a family or household member." Physical harm means "any injury, illness, or other physiological impairment regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶ 29} The evidence shows that Timm and the victim got into an argument while both of them were intoxicated. According to the victim's testimony and the statements Timm made before he was handcuffed, the two were arguing over his phone. The victim testified that Timm hit her with a pillow and then she tried to punch him. At this point, according to the victim, he pushed her and she fell, injuring her head. According to Timm, he "threw" the victim down and she injured her head. The victim called 911, but hung up the phone. The victim's daughter's friend called 911 again, and told the dispatcher that Timm had "slammed" the victim "to the ground," causing her injury.

{¶ 30} The city presented evidence that, if believed, established Timm caused or attempted to cause the victim physical harm by hitting her with the pillow and throwing or pushing her, which caused her to fall and hit her head. The victim suffered a head wound that needed six staples to close. Even without Timm's

statement made after he was in handcuffs, that he slammed the victim to the ground, there was sufficient evidence to convict him of domestic violence. Moreover, this was a bench trial and we presume the trial judge considered only properly admitted evidence. *See State v. Neal*, 8th Dist. Cuyahoga No. 89574, 2008-Ohio-1077, ¶ 18.

{¶ 31} In light of the above, there was sufficient evidence to convict Timm of domestic violence. The second assignment of error is overruled.

{¶ 32} In the third assignment of error, Timm argues that the trial court erred when it allowed in the testimony of Patrolman Kelly when the officer was not on the witness list, in violation of Crim.R. 16. The city concedes that Patrolman Kelly was not on the witness list but argues that Timm was aware that Patrolman Kelly would likely testify at trial.

{¶ 33} Crim.R. 16(I) provides that "[e]ach party shall provide to opposing counsel a written witness list, including names and addresses of any witness it intends to call in its case-in-chief, or reasonably anticipates calling in rebuttal or surrebuttal."

{¶ 34} The Ohio Supreme Court has set out a test for determining whether the city's failure to comply with Crim.R. 16 constitutes reversible error:

> Prosecutorial violations of Crim.R. 16 are reversible only when there is a showing that (1) the prosecution's failure to disclose was a willful violation of the rule, (2) foreknowledge of the information would have benefited the accused in the preparation of his [or her] defense, and (3) the accused suffered some prejudicial effect.

*State v. Joseph*, 73 Ohio St.3d 450, 458, 653 N.E.2d 285 (1995), citing *State v. Parson*, 6 Ohio St.3d 442, 445, 453 N.E.2d 689 (1983).

{¶ 35} We find no evidence that the city willfully failed to disclose Patrolman Kelly as a witness, that foreknowledge that Patrolman Kelly was going to testify would have benefitted Timm's defense, or that Timm suffered any prejudice.

{¶ 36} In *Mayfield Hts. v. Molk*, 8th Dist. Cuyahoga No. 84703, 2005-Ohio-1176, this court agreed with the trial court's ruling that the defendant was not unfairly prejudiced when the prosecutor failed to provide him with a witness list in discovery. This court reasoned that the defendant had an opportunity to view the police report at previous pretrials and was in possession of a copy of his ticket, which indicated the arresting officer's name and badge number. *Id.* at ¶ 12.

{¶ 37} In *State v. Standen*, 9th Dist. Lorain No. 05CA008813, 2006-Ohio-3344, the defendant sought exclusion of a police officer's testimony when the state failed to disclose a police officer as a witness in a timely manner. The Ninth Appellate District found that the trial court did not err in allowing the police officer to testify because the defendant received a copy of the police report in response to his discovery request and the report identified the officer and noted his presence on the scene. *Id.* at ¶ 16. The court concluded that the defendant failed to demonstrate any willful failure by the state to disclose the witness's identity or that the defendant suffered any prejudicial effect. *Id.*

{¶ 38} In this case, the trial court determined that the city had substantially complied with Crim.R. 16 because Patrolman Kelly's name was on documents provided to the defense in discovery. We note that the city provided the call for service report and police report during discovery, both of which contained

Patrolman Kelly's name and badge number. The criminal complaint was signed by Patrolman Kelly and included his name and badge number. The city also turned over, prior to trial, footage from Patrolman Kelly's body camera.

{¶ 39} In light of the above, we find that the trial court did not abuse its discretion when it allowed Patrolman Kelly to testify.

{¶ 40} The third assignment of error is overruled.

{¶ 41} In the fourth assignment of error, Timm claims that the cumulative error doctrine prevented him from receiving a fair trial. We disagree.

{¶ 42} Under the doctrine of cumulative error, a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of the errors does not individually constitute cause for reversal. *State v. Obermiller*, 8th Dist. Cuyahoga No. 101456, 2019-Ohio-1234, ¶ 52, citing *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 132. However, the doctrine of cumulative error is inapplicable when the alleged errors are found to be harmless or nonexistent. *Id.*, citing *id.*

{¶ 43} Because we have determined that none of the individual claims of error are well taken, the claim of cumulative error likewise fails.

{¶ 44} The fourth assignment of error is overruled.

{¶ 45} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue of this court directing the Berea Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

PATRICIA ANN BLACKMON, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR